# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| GREAT LAKES COMMUNICATION CORPORATION and SUPERIOR TELEPHONE COOPERATIVE,<br><br>    Plaintiffs,<br><br>vs.<br><br>IOWA UTILITIES BOARD, Utilities Division, Department of Commerce; ROBERT B. BERNTSEN, KRISTA K. TANNER, and DARRELL HANSON, in their Official Capacities as Members of the Iowa Utilities Board and not as Individuals; and NEUSTAR, INC., the North American Numbering Plan Administrator and Pooling Administrator;<br><br>    Defendants. | No. C09-4085-DEO<br><br>**ORDER ON MOTIONS TO INTERVENE AND TO ADD PARTIES** |

      This case involves the complex world of telecommunications and the often confusing interplay between the state and federal regulations and regulatory bodies that govern telecommunications providers. The plaintiffs have provided an informative summary of the roles of the parties, portions of which the court adopts for purposes of the current motions, as follows:

> The world of telecommunications regulation is divided into two hemispheres: interstate and international telecommunications are regulated by the Federal Communications Commission ("FCC") pursuant to authority delegated by Congress. 47 U.S.C. § 151. Intrastate telecommunications are regulated at the state level by agencies, like the Iowa Utilities Board ("IUB"), pursuant to authority delegated to them. Iowa Code § 476.1; 47 U.S.C. § 152(b). . . .

Great Lakes is a "local exchange carrier" ("LEC") providing telephone service to customers in Spencer, Iowa under the Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 153(26). Great Lakes serves customers that provide conference-calling services. Subscribers to the conference-calling services reach the conference-calling "bridges" by dialing a long-distance telephone number and entering an access code. Once connected to the conference bridge, customers can talk to anyone else also connected to the bridge and using the same access code. The conference-calling services are free to the persons calling them, other than the long-distance charges owed to their IXCs [i.e., long-distance companies or "interexchange carriers"].

To provide service to its conference-calling service provider customers, Great Lakes needs telephone numbers that it can assign. Great Lakes obtains these numbers from the North American Numbering Plan Administrator ("NANPA"), a non-governmental entity to whom the FCC has delegated authority to administer the numbering system for the public switched telephone network. FN1/

> FN1/ Similarly, the FCC has delegated authority to a Pooling Administrator to administer subsets of telephone numbering resources known as "thousand-number blocks" for the purpose of conserving numbers through "pooling." The "pooling" process allows more than one carrier to share the local exchange prefix ("NXX") that follows the area code ("NPA").

Neustar, Inc. was selected by the FCC to function as both NANPA and the Pooling Administrator.

[Great Lakes] provides access to its local exchange facilities and customers [through which] long-distance companies ("interexchange carriers," or "IXCs") such as Qwest Communications Corporation ("Qwest"), AT&T Corporation ("AT&T"), or Sprint Communications Company, L.P ("Sprint"), can complete telephone calls from their

customers to Great Lakes' conference-calling service providers. To compensate Great Lakes for the use of its local exchange facilities, Great Lakes collects "terminating access charges" from the IXCs. The access charges [allegedly] owed by the IXCs to LECs [allegedly] are included in the service fees the long-distance companies charge their customers.

Great Lakes' access charges are specified in tariffs on file with the FCC and the IUB. Most of the terms of the Great Lakes interstate access tariff mirror those in the National Exchange Carrier Association ("NECA") Access Tariff No. 5. The NECA Access Tariff defines the terms and conditions for interstate access charges for more than 1,000 local exchange carriers. . . . [Footnote omitted.]

[According to Great Lakes,] [t]he terms of the Great Lakes intrastate access tariff adhere closely to the Iowa Telecommunications Association ("ITA") Access Tariff No. 1, except for minor exceptions. The ITA intrastate access tariff defines the terms and conditions for intrastate access charges for over 140 Iowa LECs. . . . [Footnote omitted.] [T]he ITA Access Tariff incorporates the terms and conditions of the NECA Access Tariff No. 5, but provides rates and charges specific to traffic originated and terminated within Iowa. [According to Great Lakes], the General Terms and Conditions, including definitions of terms, are identical between the NECA interstate access tariff . . . and the ITA intrastate access tariff. . . .

For more than two years now, Qwest and Sprint have withheld payment of access charges [that Great Lakes claims are] owed to Great Lakes. The IXCs . . . assert[] that Great Lakes' access tariffs do not apply to traffic destined for conference calling providers. The IXCs have taken their complaints to state regulators, like the IUB. In this case, Qwest filed a Complaint at the IUB against [Great Lakes] and seven other Iowa local telephone companies, seeking relief from its obligation to pay intrastate access charges.

The IUB recently released its Final Order. . . . The IUB held, among other things, that: (1) Conference-calling

3

service providers did not subscribe to services provided by [Great Lakes] under the terms of the NECA interstate access tariff and [Great Lakes's] local exchange service tariffs. (2) Conference-calling service providers are not end users under the terms of the NECA interstate access tariff and [Great Lakes's] local exchange service tariffs. (3) The sharing of revenues between [Great Lakes] and its conference-calling service provider customers is not unlawful per se, but it is unreasonable under the facts in this case. (4) Great Lakes has improperly assigned all of its telephone numbers to conference-calling service providers. (5) Great Lakes violated the terms of its tariffs when it charged Qwest, Sprint, and AT&T for terminating switched access fees for the traffic at issue. (6) NANPA and the Pooling Administrator are directed to commence reclamation proceedings of all blocks of telephone numbers assigned to Great Lakes. And (7) The IUB will initiate a proceeding asking Great Lakes to show cause why its [Certificate of Public Convenience and Necessity] should not be revoked.

Doc. No. 6-3, pp. 3-4 (citations omitted).

The plaintiffs Great Lakes Communication Corporation ("Great Lakes") and Superior Telephone Cooperative have filed this action against the defendants Iowa Utilities Board ("IUB"); Robert B. Berntsen, Krista K. Tanner, and Darrell Hanson, in their official capacities as members of the IUB; and Neustar, Inc. ("Neustar"), as the North American Numbering Plan Administrator and Pooling Administrator, seeking "declaratory, temporary, preliminary and permanent injunctive relief against the enforcement" of the IUB's Final Order (the "IUB Order") issued September 21, 2009, in the matter of *Qwest Communications Corp. v. Superior Telephone Cooperative, et al.*, Doc. No. FCU-07-2. *See* Doc. No. 1-2 (the "*Qwest* action").

As noted in the plaintiff's summary quoted above, the IUB Order, among other things, directs Neustar to reclaim "all blocks of telephone numbers assigned to Great Lakes." Great Lakes received notice from Neustar that it would begin this reclamation

during the first week in November 2009. As a result, Great Lakes filed an *ex parte* motion for temporary restraining order and a motion for preliminary injunction pursuant to Federal Rule of Civil Procedure 65. Doc. No. 6. The court granted the motion as to the request for temporary restraining order, and issued a Temporary Restraining Order on November 5, 2009, to prevent Neustar from going forward with reclamation of the numbers assigned to Great Lakes, an action that allegedly would put Great Lakes out of business. Doc. No. 11. The motion for preliminary injunction was referred to the undersigned to conduct a hearing and prepare a report and recommended disposition of the motion. Doc. No. 12. The motion is set for hearing on Friday, November 13, 2009, before the undersigned. Doc. No. 16.

Qwest Communications Company, LLC ("Qwest) has filed an emergency motion to intervene in this action as of right, requesting expedited relief pursuant to Local Rule 7(j). Doc. No. 21. The plaintiffs have filed a resistance to the motion, Doc. No. 23, and Qwest has filed a reply, Doc. No. 31. Sprint Communications Company, LP ("Sprint") also has filed a motion to intervene as of right, seeking expedited relief. Doc. No. 34. The plaintiffs have filed a resistance, to the motion. Doc. No. 36. In addition, the defendants IUB and its members (the "IUB defendants") have filed a motion to join Qwest, Sprint, and the Consumer Advocate Division of the Iowa Department of Justice (the "CAD") as necessary parties to this action pursuant to Federal Rules of Civil Procedure 19(a) and 12(b)(7). Doc. No. 33. The plaintiffs have filed a resistance. Doc. No. 35. Resolution of these motions prior to the preliminary injunction hearing is warranted so that any parties added to the case can be present and participate in the hearing.

"A part is entitled to intervene as a matter of right if: (1) it claims an interest relating to the subject of the action; (2) the disposition of the action may impair or impede its ability to protect its interest; and (3) its interest is not adequately represented by existing parties." *Little Rock School Dist. v. North Little Rock School Dist.*, 378 F.3d 774, 780

(8th Cir. 2004) (citing Fed. R. Civ. P. 24(a)(2); *Chiglo v. City of Preston*, 104 F.3d 185, 187 (8th Cir. 1997)). There is no question that Qwest and Sprint claim an interest relating to the subject of this action. There also is no question that disposition of the action without Qwest's and Sprint's presence "*may*" impede their ability to protect their respective interests. The fighting issue with regard to the motions to intervene is whether the IUB adequately represents the interests of Qwest and Sprint in the action.

In determining whether the interests of a proposed intervenor are represented adequately by an existing party, the Eighth Circuit Court of Appeals employs a comparison-of-interests test. If the interests of the proposed intervenor and an existing party are identical, then intervention is not allowed. If their interests are adverse, then intervention generally is allowed. When their interests are similar but not identical, then the court must determine whether the existing party's representation of the proposed intervenor's interest is adequate. Under the permissive standard of Federal Rule of Civil Procedure 24, as interpreted by the Eighth Circuit, the proposed intervenor generally must make only "a minimal showing that representation may be inadequate to be entitled to intervene on that basis[.]" *Little Rock Sch. Dist.*, 478 F.3d at 780 (internal quotation marks, citations omitted); *see Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs.*, 60 F.3d 1304, 1307-08 (8th Cir. 1995) (proposed intervenor need not establish that its interests will, in fact, be impaired if it is denied permission to intervene, but only that its interests *may be* impaired, as a practical matter) (citing, *inter alia*, *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 738 F.2d 82, 84 (8th Cir. 1984)); *Animal Protection Inst. v. Merriam*, 242 F.R.D. 524, 527 (D. Minn. 2006) ("The interest test should be construed broadly, so as to include as many parties as practicable and, although the intervenor cannot rely on an interest that is 'wholly remote and speculative,' the interest may be contingent on the outcome of litigation.") (citations omitted).

However, when the existing party is "a government entity that represents interests common to the public," then the proposed intervenor's burden is greater:

> We presume that the government entity adequately represents the public, and we require the party seeking to intervene to make a strong showing of inadequate representation; for example, it may show that its interests are distinct and cannot be subsumed within the public interest represented by the government entity. [*Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 423 (8th Cir. 1999)]; *see also Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 1000 (8th Cir. 1993). The party may meet that burden by showing that its interests at risk in the litigation are not shared by the general citizenry. *See Mille Lacs Band*, 989 F.2d at 1001 (noting that a specific property interest in the outcome of the litigation goes beyond the general public interest in the preservation of natural resources); *[South Dakota v.] Ubbelohde*, 330 F.3d [1014,] 1025 [(8th Cir. 2003)] (noting that when the government is forced to weigh competing interests, such as weighing upstream and down stream interests in the management of a river system, it may favor one over another and therefore be unable to adequately represent the conflicting interests). It is not sufficient that the party seeking intervention merely disagrees with the litigation strategy or objectives of the party representing its interests. *Chiglo [v. City of Preston*, 104 F.3d [185,] 188 [(8th Cir. 1997)].

*Little Rock Sch. Dist.*, 378 F.3d at 780.

In the present case, Qwest and Sprint argue their interests are not represented adequately by the IUB. The IUB defendants agree, as evidenced by those defendants' motion to add Qwest, Sprint, and the CAD as necessary parties. The IUB defendants assert, "It is beyond any question that this litigation 'may' impact Qwest and Sprint's interest. Likewise, these long distance carriers have a financial interest in the outcome in this matter that the Board does not have." Doc. No. 33, p. 2. The plaintiffs counter that the proposed intervenors' financial interests in the outcome of this case are not sufficient to require intervention as of right. Doc. No. 23, p. 3 (citing *Curry v. Regents of Univ. of*

*Minn.*, 167 F.3d 420 (8th Cir. 1999)). The plaintiffs further argue that the IUB, in defending its Final Order, is capable of making every argument on the merits that Qwest and Sprint could make, with the result that Qwest and Sprint are not indispensable parties.

The IUB defendants' motion to join Qwest, Sprint, and the CAD as indispensable parties is brought under Federal Rule of Civil Procedure 19. Like Rule 24, governing intervention, Rule 19 also is permissive, requiring joinder of parties who have such an interest in the subject matter of the action that disposition of the action in their absence "*may [] as a practical matter* impair or impede the person's ability to protect the interest[.]" Fed. R. Civ. P. 19(1)(1)(B)(i) (emphasis added).

The court has considered the arguments of the parties and the proposed intervenors, both in the abstract and in light of the specific facts of this case, and finds that not only are Qwest and Sprint entitled to intervene as of right, they are indispensable parties to this action. "An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered between the other parties to the suit without radically and injuriously affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience." *Buss v. Prudential Ins. Co. of Am.*, 126 F.2d 960, 967 (8th Cir. 1942) (citations omitted). There is no question that Qwest and Sprint have a present and future interest in the outcome of this litigation, and their interests go beyond the general public interest represented by the IUB defendants. The plaintiffs' attempt to couch this action solely in terms of the IUB's ability to enforce its Final Order is "inconsistent with equity and good conscience." The plaintiffs have asked the court to prevent Neustar from reclaiming telephone numbers from Great Lakes, and otherwise to enjoin the operation of the IUB order pending further action by the FCC. If the court grants the requested relief, Qwest and Sprint will be impacted directly by such a decision. It is disingenuous even to suggest that Qwest and Sprint are not indispensable parties to this action.

8

On the other hand, the IUB defendants have made an inadequate showing that the CAD is an indispensable party that should be added to the case.

For these reasons, Qwest's and Sprint's motions to intervene are **granted**, and the IUB defendants' motion to join Qwest and Sprint as indispensable parties also is **granted**. Qwest and Sprint are joined as defendants in this case, to participate fully as parties in all proceedings. Qwest and Sprint will be named in the case caption simply as defendants, rather than as both intervenors and defendants. The IUB defendants' motion to join the CAD as an indispensable party is **denied**.

**IT IS SO ORDERED.**

**DATED** this 10th day of November, 2009.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT